IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANGELA R.,**

    **Plaintiff,**

v.

    Civil Action 2:20-cv-6322
    Judge Michael H. Watson
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Angela R., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 21), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff protectively filed her application for benefits on July 12, 2018, alleging that she has been disabled since September 10, 2016, due to being wheelchair bound, back issues, hip issues, hypersomnia, fibromyalgia, asthma and obesity. (R. at 250-56, 203.) Plaintiff's application was denied initially in September 2018 and upon reconsideration in December 2018.

1

(R. at 146-89.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 190-91.) ALJ Christopher P. Grovich held a video hearing on November 6, 2019, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 96-114.) A vocational expert ("VE") also appeared and testified. (*Id.*) On December 6, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 39-61.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.)

## II. RELEVANT RECORD EVIDENCE

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and relevant hearing testimony:

> [Plaintiff] testified that she had to stop working at Rite Aid due to a combination of being unable to handle full-time work as well as some vague harassment allegation[s] regarding her religion. She testified to having problems with activities of daily living due to her impairments. Physically, she reported using a motorized scooter since June of 2018 to ambulate. She indicated she has problems using a cane/walker due to pain in her hands. She further testified to having incontinence issues for a number of years that require her to use adult diapers. In terms of treatment, [Plaintiff] reported that she takes medications (Exhibit 11E). She also testified to having a service dog for hypoglycemic episodes and general stress levels. Finally, as noted below, [Plaintiff] reported and testified to numerous activities of daily living.

(R. at 48-49.)

### B. Relevant Medical Records

The ALJ summarized the relevant medical records concerning Plaintiff's physical impairments as follows:

[Plaintiff] reported having worse restless legs, worse pain and less frequent migraines to her neurologist on August 30, 2017. Importantly, examination was generally normal with [Plaintiff] having normal gait and normal strength in her upper and lower extremities. She was diagnosed with fibromyalgia, migraine with aura, not intractable, without status migrainosus, restless legs syndrome, obstructive sleep apnea and fibromyalgia. One of her medications was increased (Exhibit 6F).

A pulmonary function test of [Plaintiff] on October 23, 2017 showed normal lung volumes and normal diffusion capacity with some findings suggestive of early airway obstruction (Exhibit 4F). Significantly, on October 24, 2017, [Plaintiff] admitted to being able to perform all daily activities without any limitations from a cardiopulmonary perspective. Examination was generally normal except for [Plaintiff] being obese. [Plaintiff]'s asthma was noted to be well controlled in November of 2017 (Exhibit 4F). [Plaintiff] was recommended testing by her neurologist for slurred speech on March 21, 2018 (Exhibit 6F).

X-rays of [Plaintiff]'s thoracic spine on March 23, 2018 showed only mild DDD. X-rays of [Plaintiff]'s lumbar spine, pelvis and left hip were unremarkable (Exhibit 10F). A MRI of [Plaintiff]'s brain was unremarkable on March 31, 2018 (Exhibit 5F, 6F). [Plaintiff] was advised to undergo testing for her complaints of back pain on April 2, 2018 (Exhibit 6F). MRIs of [Plaintiff]'s lumbar spine and thoracic spine were normal on April 21, 2018 (Exhibits 5F, 6F). On April 27, 2018, [Plaintiff]'s neurologist noted that [Plaintiff] had "seen a rheumatologist who did not think there was anything wrong with her." One of [Plaintiff]'s medications was discontinued (Exhibit 6F). [Plaintiff] reported having a flare of her conditions to her PCP on June 5, 2018. [Plaintiff] was referred for additional treatment for her ongoing problems by her PCP in July of 2018 (Exhibit 11F).

[Plaintiff] complained of having worsening arthralgias to a rheumatologist on August 27, 2018. Examination was generally normal except for [Plaintiff] being obese and having bilateral hand puffiness and joint tenderness. She had 5/5 strength and normal sensory and motor. [Plaintiff] was diagnosed with polyarthralgia and fibromyalgia. She was recommended testing. Examination by [Plaintiff]'s rheumatologist was generally unchanged in September of 2018. X-rays of [Plaintiff]'s knees and hips were noted to be normal. X-rays of [Plaintiff]s' hands were noted to show mild-to-moderate DJD. She was prescribed medication. [Plaintiff] was found to have psoriatic arthritis by her rheumatologist in October of 2018. She was prescribed medication (Exhibit 12F). [Plaintiff] was given conservative treatment for dyshidrotic eczema and dermatitis by a dermatologist in September and October of 2018.

> [Plaintiff] admitted to ambulating well while on steroids (Exhibit 11F). [Plaintiff] began receiving pain management in October and November of 2018 (Exhibit 9F). An MRI of [Plaintiff]'s lumbar spine on November 26, 2018 showed mild discogenic changes without evidence of canal stenosis or disc herniation (Exhibit 10F). [Plaintiff]'s rheumatologist adjusted her medications in December of 2018. Examination was unchanged with [Plaintiff] having 5/5 strength and normal sensory and motor (Exhibit 12F).
>
> In January of 2019, [Plaintiff] requested a prescription for adult diapers from her PCP due to incontinence. She reported needing a scooter for transportation and traveling with a service dog. [Plaintiff] was given conservative treatment for her impairments (Exhibit 18F). [Plaintiff] complained of having low back pain on January 29, 2019. She exhibited mildly decreased sensation in her lower extremities and tenderness in her lumbar spine and arthritis in her hands. [Plaintiff]'s medication was renewed and she was ordered a neurosurgical consult. [Plaintiff] admitted to having some benefit from medications on August 8, 2019.
>
> On August 12, 2019, examination by her PCP was generally normal except for [Plaintiff]'s neurological examination being limited due to being in a wheelchair. [Plaintiff] was diagnosed with uncontrolled type II DM, psoriatic arthritis, essential HTN, subclinical hypothyroidism, migraine, fatty liver and cauda equina syndrome. She was prescribed medications (Exhibit 18F). [Plaintiff] was briefly treated for acute bronchitis at the ER on September 1, 2019. Examination was unremarkable except for [Plaintiff] having mildly increased work of breathing and diminished breath sounds with scattered expiratory wheezing, hacking cough and mild dyspnea when speaking. An EKG was normal. X-rays of [Plaintiff]'s chest showed no acute airspace disease. She improved with treatment and she was prescribed medications (Exhibit 19F). [Plaintiff] received medications for moderate persistent asthma with acute exacerbation and candidal stomatitis on September 9, 2019. Examination was generally normal except for [Plaintiff]'s neurological examination being limited due to being in a wheelchair. [Plaintiff] had clear lungs (Exhibit 18F). Finally, [Plaintiff] has received chiropractic treatment and physical therapy for her pain during the relevant period (Exhibit 20F).

(R. at 49-50.)

> Concerning her obesity, [Plaintiff] has had BMIs of 50.4 in August of 2017, 41.37 in August of 2018 and 52.35 in August of 2019 (Exhibits 6F, 12F, 18F).

(R. at 51.)

4

### III.     ADMINISTRATIVE DECISION

On December 6, 2019, the ALJ issued his decision. (R. at 39-61.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. (R. at 45.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 24, 2017, the beginning of the relevant period. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: obesity, osteoarthritis, diabetes mellitus (DM), degenerative disc disease, psoriatic arthritis, asthma, hypertension, bilateral hand degenerative joint disease (DJD), cauda equina syndrome, thyroid disorder and fibromyalgia. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 46.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasional use of foot controls bilaterally; no climbing; occasional balancing; occasional kneeling, crouching and crawling; frequent stooping; frequent reaching, handling and fingering bilaterally; no concentrated exposure to excessive cold or excessive vibration or workplace hazards including unprotected machinery and unprotected heights; no concentrated exposure to no pulmonary irritants including fumes, odors, dusts, chemicals and gases; no production rate or pace work, such as assembly line work; no more than frequent interaction with the public, coworkers and supervisors; and would need to use a wheelchair or motorized scooter while moving around at the workplace.

(R. at 48.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a welder helper, dog groomer, pharmacy technician, and sales promotion representative. (R. at 54.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 54-55). He therefore concluded that Plaintiff has not been disabled since August 24, 2017, the beginning of the relevant period. (R. at 56.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V. ANALYSIS

Plaintiff sets forth two contentions of error. First, she asserts that the ALJ failed to properly evaluate the opinion evidence of Plaintiff's treating pain management specialist, Michael Sayegh, M.D., certified registered nurse practitioner Brandi Purdy, CRNP, and treating nurse practitioner, Staci Fellows, NPC. (ECF No. 13 at 7-10). Further, Plaintiff

contends that, under *Seila Law LLC v. CFPB*, 591 U.S. --, 140 S.Ct. 2183 (June 20, 2020), the Social Security Administration's structure is unconstitutional as it violates the separation of powers doctrine. (*Id.* at 11-15.) As explained below, the Undersigned agrees that the ALJ failed to properly evaluate the medical opinions at issue.[2]

### A. Evaluation of Opinion Evidence

Plaintiff contends that the ALJ failed to properly evaluate the opinion evidence of pain management specialist, Dr. Sayegh, certified registered nurse practitioner, Ms. Purdy, and treating nurse practitioner, Ms. Fellows. (ECF No. 13 at 7-10.)

As a preliminary matter, the new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. (R. at 250-256.) *See* 20 C.F.R. § 404.1520c. These governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings,

---

[2] In light of this conclusion, the Court will not undertake any analysis of the constitutional issue raised by Plaintiff's second contention of error regarding the separation of powers doctrine. *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 571 n.5 (6th Cir. 2020) ("As the Supreme Court has stated, '[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not pass on questions of constitutionality ... unless such adjudication is unavoidable.'" (quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)); (citing *Matal v. Tam*, ––– U.S. –––, 137 S. Ct. 1744, 1755, 198 L.Ed.2d 366 (2017).

8

diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

"Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4).

"Medical opinion" and "prior administrative medical finding" are defined as follows:

(2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions ....

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes ....

* * *

(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; ....

9

>   (v) ... your residual functional capacity;
>
>   (vi) Whether your impairment(s) meets the duration requirement; and
>
>   (vii) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

§ 404.1513(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but

are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further

clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

> Here, the ALJ addressed the medical source opinions at issue as follows:
>
> Michael Sayegh, M.D., and Brandi Purdy, CRNP, completed a medical source statement on August 22, 2019. They found [Plaintiff] is capable of sitting or standing/walking for at least 6 hours while occasionally using a wheel chair as an ambulatory aide. They indicated [Plaintiff] has no significant limitations with reaching, handling or fingering. They determined [Plaintiff] would be off task 5% of the workday and miss work about two days per month (Exhibit 15F).
>
> Staci Fellows, NPC, completed a medical source statement on January 29, 2019. She found [Plaintiff] is capable of sitting for about 2 hours, standing/walking for less than 2 hours while taking unscheduled breaks every 30 minutes for at least 90 minutes at one time, using an ambulatory aide and requiring a service dog; and no use of hands or fingers except for reaching in front of body with either arm for 5-10 percent of an 8-hour workday. Ms. Fellows determined [Plaintiff] would be off-task 25% of the workday and would miss work more than four days per month (Exhibit 14F).
>
> The opinions of Dr. Sayegh and Ms. Purdy are not persuasive or consistent with the medical evidence of record, which shows that [Plaintiff] has significant limitations caused by her impairments. It is an overestimate of [Plaintiff]'s functional ability. Conversely, the opinions of Ms. Fellows are not persuasive or consistent with [Plaintiff]'s objective testing including but not limited to an MRI of [Plaintiff]'s lumbar spine that showed only mild changes (Exhibit 10F). The medical evidence of record does not, at all, support Ms. Fellows' opinion that [Plaintiff] is limited to less than four hours of combined sitting, standing, and walking, or that [Plaintiff]'s impairments would cause her to be off task 25% or more during a typical workday. Thus, the opinions of Dr. Sayegh, Ms. Purdy and Ms. Fellows are not persuasive because they are not supported by the evidence and are not consistent with the record as a whole.

(R. at 53-54.)

Plaintiff appears to raise two distinct arguments regarding the ALJ's evaluation of this opinion evidence. First, Plaintiff argues that the ALJ did not specifically address whether these opinions are consistent with or supported by the record, instead offering only conclusory

declarations. Focusing more specifically on the opinions provided by Dr. Sayegh and Ms. Purdy, Plaintiff argues that the ALJ's evaluation of these opinions is internally inconsistent and confusing. By extension, Plaintiff is arguing that the RFC is not supported by substantial evidence.

To be sure, the ALJ's discussion regarding the supportability and consistency of these opinions is scant and conclusory, particularly with respect to the opinions of Dr. Sayegh and Ms. Purdy. The Commissioner does not address this argument directly in any meaningful way and courts have not been reluctant to order remand based on similarly limited discussions. *See, e.g., Stacie B. v. Comm'r of Soc. Sec.,* No. 2:21-CV-4650, 2022 WL 1793149, at *8 (S.D. Ohio June 2, 2022) (finding the ALJ did not sufficiently discuss supportability and consistency); *Andrew M. v. Comm'r of Soc. Sec.,* No. 1:20-CV-906, 2022 WL 683457, at *6 (S.D. Ohio Mar. 8, 2022) (finding that "[t]he error to articulate the analysis of "supportability" and to fully articulate the analysis of the "consistency" factor is not harmless.")

Relatedly, rather than specifically address the issues of supportability and consistency with respect to these opinions, the ALJ found them to be "an overstatement of [Plaintiff's] functional abilities." The Undersigned agrees that the ALJ's statements regarding the opinions of Dr. Sayegh and Ms. Purdy are confusing. As confirmed by the excerpt above, Dr. Sayegh and Ms. Purdy opined, *inter alia*, that Plaintiff would "miss work about two days per month," a level of absenteeism the VE testified likely would be work preclusive. (R. at 141.) The ALJ's cited basis for broadly rejecting the opinions of Dr. Sayegh and Ms. Purdy was that their opined limitations were not restrictive enough. Despite this finding and his incorporation of certain

13

greater restrictions, as the Commissioner concedes, the ALJ failed to include any limitation relating in any way to Plaintiff's absenteeism.

This unexplained decision to omit any limitation as to absenteeism, under the circumstances here, precludes the Court's ability to trace the ALJ's path of reasoning on that issue. That is, if the ALJ intended to reject the opinion that Plaintiff would "miss work about two days per month," he did not do so in a way that is clear to the Court. Such failure constitutes reversible error. *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-99, 2021 WL 5177818, at *3 (S.D. Ohio Nov. 8, 2021) ("[B]y failing to explain why certain limitations were not incorporated into the RFC, an ALJ prevents the reviewing court from conducting a meaningful review to determine whether substantial evidence supports his decision."); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *5 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) ("[T]he ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports his decision."); *see also Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) ("Because the ALJ did not provide an analysis that is sufficiently specific, Allen's argument that the ALJ failed to properly articulate the RFC calculation is well-taken. The Court is unable to trace the path of the ALJ's reasoning."); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC

findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision").

The Commissioner's attempt to explain the ALJ's reasoning is not persuasive. For example, the Commissioner argues that the ALJ agreed with the opinions of the state agency physicians that Plaintiff would not be excessively absent from work. The ALJ, however, did not explain that Dr. Sayegh's and Ms. Purdy's opinions were being addressed through the opinions of the state agency physicians. Moreover, where the Court cannot evaluate the ALJ's reasoning, accepting the Commissioner's attempt to explain this omission would result in the Court "engaging in *post hoc* rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13–CV–1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)); *Garrett v. Berryhill*, No. 3:17-cv-00049, 2018 WL 1521763, at *7 (S.D. Ohio Mar. 28, 2018) (remanding where "the Commissioner improperly relies on *post hoc rationalizations* to substitute for the ALJ's deficient consideration of" an issue).

Similarly unavailing is the Commissioner's argument that the ALJ's statement regarding these opinions is not inconsistent. In support of this argument, the Commissioner cites certain more restrictive limitations included in the RFC beyond those opined by Dr. Sayegh and Ms. Purdy. The inclusion of these other limitations, however, simply does nothing to explain the

15

ALJ's treatment of the matter of Plaintiff's absenteeism as addressed by these medical sources. If anything, it underscores the need for an explanation as to why the ALJ found certain of their opined limitations in need of further restriction but did not incorporate even the opined amount of absenteeism into the Plaintiff's RFC. Additionally, as the above discussion indicates, the challenge raised by Plaintiff here is not, as the Commissioner frames it, one involving the weighing of the evidence. Finally, the ALJ's rejection of Ms. Fellows's opinion that Plaintiff would be absent four days per month does not explain the apparent inconsistency in the ALJ's consideration of Dr. Sayegh's and Ms. Purdy's opinions.

In short, the ALJ did not provide the proper articulation here. Moreover, it is not clear from the record why, when concluding that Dr. Sayegh's and Ms. Purdy's opined limitations were an overstatement of Plaintiff's functional ability, the ALJ failed to incorporate even what he appears to have considered too minimal a limitation as to absenteeism, let alone any additional limitation. The ALJ simply failed to address the issue of absenteeism at all. This leaves the Court unable to trace the ALJ's path of reasoning and unable to assess whether the RFC is supported by substantial evidence. Accordingly, the Undersigned **RECOMMENDS** that this statement of error be **SUSTAINED**.

## VI. CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   June 16, 2022                                          /s/ *Elizabeth A. Preston Deavers*
                                                                                        Elizabeth A. Preston Deavers
                                                                                        United States Magistrate Judge